Good morning. May it please the court. My name is Branson Wood and it's my privilege today to speak for Roger and Teresa Cottrell on a case that was, underlying case was for uninsured motor vehicle coverage. Because it was a summary judgment disposition on this case of necessity, the argument in this case needs to be a little bit fact intensive. The case is an uninsured motor vehicle case that arose out of three vehicles. Two of them were actually involved in the collision and one, the uninsured motor vehicle that left the scene, was involved in conduct that helped to cause the collision. The case arose out of a wreck where Roger Cottrell was driving north on Highway 61, just north of St. Louis, which is an area where it is a four-lane divided highway. It's not limited access but it's divided highway. As Mr. Cottrell was driving forth at 65 miles an hour, the driving speed, and he's in the driving lane, on his right-hand side there was a black pickup truck that was on the right-hand side. There was a brown car, the car that left the scene and is the uninsured motor vehicle that was in the median preparing to make a left turn. The evidence in this case is that as Cottrell was heading up the road that both of the other cars were stopped. The pickup truck on the right at a stop sign, the brown car on the left in the median at a yield sign. And perhaps not knowing exactly which one had the right-of-way at that point with yields and stops and the like, the brown car, the uninsured motor vehicle, waved the pickup truck across, come on across. The evidence is that when the pickup truck came across, inexplicably, the uninsured motor vehicle, the brown car, made a left turn in to a complete stop in that driving lane, the lane that's reserved for moving traffic, and in front of Roger Cottrell as he was approaching. The issue in this case, the issue is whether or not there were material issues of fact. And the genuine material issue of fact in this case is whether or not the conduct of the driver of the brown vehicle caused or contributed to cause the collision in this case. Because there is evidence that that's a genuine issue of material fact, the judgment below should be reversed and the case remanded for trial. The evidence in this case that helps us to understand that it did make a difference, that there was a causal connection between the driver of the uninsured motor vehicle and the wreck is based upon the testimony both of Baumgart and also an independent third party witness, Elliott. Baumgart testified in his deposition that was presented in the district court that he was waiting for the road to clear and that he was waved across. He testified that before he pulled out that there was plenty of time for him to have safely crossed that roadway. That evidence is... He was obviously mistaken. I'm sorry? He was obviously mistaken if he thought there was plenty of time. Well, it turned out he was, but it turned out he was because and he also testified that rather than being able to drive across that intersection that he was required to stop in the lane that was reserved for moving traffic because this brown car cut off, made a left turn in front of him, cut off, I guess was faced with a choice as to whether or not he was going to have a collision with the brown car at that point or take his chances with Roger Cottrell's vehicle. Did Baumgart give testimony about the distance the Cottrell vehicle was from the intersection when he entered? I think the testimony that he gave was that it was like 8 to 10 car lengths or something like that away. That was the closest estimate that he gave. He also testified that he really wasn't very sure on that distance, so he was equivocal on that, but the best testimony that he gave us was 8 to 10 car lengths. That's my recollection. Baumgart's testimony was confirmed by an independent third-party witness, not just someone who was a do-gooder, but someone who observed what happened and stayed around to talk to the highway patrol so that they would know about the conduct of the brown car. She testified also that there was plenty of distance, plenty of time for Baumgart to have safely crossed that intersection, but that the uninsured motor vehicle made a left turn in front of him, forced him to stop in the road, that both vehicles came to a stop in the road before there was a collision. So what's the legal issue? The legal issue is whether or not there met the standard for summary judgment in meeting their burden to prove that there are no genuine issues of material fact. On what issue? On causation, whether or not the brown car caused or contributed to cause the wreck. That is the genuine issue of material fact and on the evidence in this case, and much of that was ignored by the trial court below. This is a case where the standard for evaluating this evidence is really critical. It's an area where American Family has made a fundamental error in how they have presented the case. In their brief, they didn't discuss the standard for review, de novo review. They didn't discuss the facts that, in fact, they failed to consider the evidence in the light that's most favorable to Cotrell, which we were entitled to. They failed to give Cotrell the benefit of reasonable inferences and they asked both the district court and this court to weigh evidence, to weigh conflicting evidence and make a decision. They asked the court to resolve conflicts within the evidence. So if the brown car approximately caused the accident, then how much coverage is there? That's probably disputed. There were seven vehicles that were insured for decades by the Cotrells. I think they were $100,000 on each one of them. Very clearly the vehicle that he was driving in has $100,000 worth of coverage. You mean uninsured motorist coverage? That's correct. So there's a dispute maybe whether the other six would... The dispute is on stacking. All seven of them can be stacked, but there may be questions as to the amount that would be there. So it's quite a bit of money. It's a lot that's important to them. The problem with American Family's argument in this case is that they have relied almost exclusively on the testimony of Roger Cotrell. And there's some good reasons why they were not entitled to rely upon that. They rely upon his testimony that he was 10 to 15 feet away from the intersection before the black pickup truck pulled out. There are a couple of reasons why that cannot be relied upon. First of all, a party is not even bound by their own estimates as far as distances and speeds. That's not something that's conclusive in this case. More importantly, the evidence in this case shows that that's a physical impossibility. Well, was that based on the statement of Mr. Cotrell that he could see the eyes of... That's correct. And I have no doubt that perhaps some point before that, that was true. Or that there was red or something like that. But the difficulty is that Roger Cotrell also suffered a concussion injury and has documented lapses or differences as far as his recollection. So there's a good probability and a jury could find that he was certainly mistaken in that recollection. The other thing is that what he testified to is a physical impossibility. If he was 10 to 15 feet away at the time that this black pickup truck was pulling out in front of him and he's driving 65 miles an hour, the black pickup truck, the time that it would have taken for Roger to get through the intersection would have been one-fifth of one second. And during that one-fifth of one second, the black pickup truck would have been required to go across a 12-foot lane of traffic to end up in this T-bone collision, which means that in a fifth of a second, that black pickup truck would have been required to go from a complete standstill, 12 feet, an average speed of like 60 miles an hour. A fifth of a second... Did the collision take place where on the divided highway? Did the actual collision take place? It took place in the driver's lane, in the lane where Roger Cottrell was driving, 12 feet from the shoulder of the road. Probably the pickup truck was further back than that, but if you give them the benefit of the doubt on that, it's 12 feet. And the idea that that pickup truck covered 12 feet in a fifth of a second, jurors know that didn't happen. So your theory is the pickup truck could have made it through the intersection if the brown car hadn't cut him off. And you say we need a jury to decide whether that's what happened or whether the pickup truck would have been hit regardless of the brown car, which is the other theory? That's exactly our point. And in evaluating that, the court needs to remember that all the evidence has to be construed in the light that's most favorable to us. You disregard evidence that's conflicting or contrary, you don't resolve those, you leave that to juries. And this court, in a number of decisions, has talked about the fact that in causation questions, those are almost always for the jury. The general rule is that causation questions are for the jury except in the most exceptional circumstances. And this is a case where we do believe that the question is one that could and should be submitted to a jury. Are you going to address the vexatious handling? Briefly, we briefed that mainly, the district court really never got to that portion of the case. And the reason they didn't get there is because they found that there was no liability on the uninsured motorist policy to begin with, or uninsured motorist coverage. We did not want to have the case reversed in this court and go back and have to have an argument about whether or not the decision of the district court had not been brought up on appeal and was still a binding finding. We wanted to make sure that if this court, as we believe you should, remands the case, that we'll have a chance to deal with that. In the case of the vexatious refusal to pay, that is also something where it's a question of reasonableness. The jury instruction on vexatious refusal to pay is 10-08, and it's one that basically requires three findings, that there's a policy, that there was refusal, and that the refusal was unreasonable. Reasonableness, and I think there are two cases that we cited in our reply brief, Shirky versus Guaranteed Trust in Life and Diane versus State Farm. Those are both cases in which they talk about the fact that reasonableness, like negligence, is almost always a question of fact. And it's a difficult question of fact because it's a question of intent. Intent can be proven by circumstantial evidence. It must be proven by taking a look at a general survey of the whole set of testimony and all the facts and all the cases like this. In this case, there were three elements that are very clearly there where there were problems. There was a failure to investigate. When the uninsured motorist claim was made, there was no further investigation ever done, no interview with the driver of the brown car, not even an interview with Baumgart. There was an attempt to force the insured to go ahead and make its claim against the third party, Baumgart. That's what they put in their letter. And there was a failure to accurately account for what happened in that. As to that part of the case also, American Family made the same fatal error of relying on evidence that was favorable to them, disregarding evidence that was unfavorable to them. If I may, if you have a question, I'll go on, but I'd like to reserve the remainder of my time, if I may. Yes, you may. Thank you. Mr. Thompson? Good morning, Your Honors. May it please the Court, Tyler Thompson for Defendant, American Family. Inevitable, I think, is the key word from Judge Autry's opinion with respect to the motion for summary judgment. And Mason Baumgart was the proximate cause of the motor vehicle accident here. And his actions are what rendered the motor vehicle accident inevitable. The Court seemed to base that, though, on looking at the actions of the brown car driver from the perspective of the wave versus the actual entry into the intersection. And it would seem to me that if you say the wave is not a proximate cause, that it's too attenuated or too far removed, that could be true. But if someone enters into the intersection and creates a hazard such that a driver coming from the opposite direction has to stop, and that stoppage is forced on the driver because of the presence of another vehicle, that seems a legitimate consideration for a potential cause. Why wouldn't that be an issue of fact for a trial and not a conclusion of law? I will agree, Your Honor, that whether or not Mason Baumgart stopped in the intersection is disputed. Mason Baumgart testified so. Silvio Luis Roussan Elliott testified so. Mr. Cottrell, the plaintiff in this case, who was driving north on 61, never even saw another vehicle in the intersection. And he never testified that he saw Mason Baumgart stop. Well, what about the argument that Mr. Cottrell is not the most reliable reporter, that the evidence is consistent with being 10 to 15 feet away from the collision, that the absence of the brown car is not consistent with any other witnesses' testimony, and that once we start viewing the evidence in a light most favorable to the non-moving party, you can't rely on Cottrell at that point? Your Honor, I agree that estimates of time and distance, as plaintiff's counsel said, are not binding on Mr. Cottrell. But that's true even with the absence of the brown car, right? I mean, you know, experience tells us that four people may witness an incident, and it's not uncommon for one witness to just absolutely see something that can't possibly be true, right? And those are uniquely questions that we let juries decide, right? Your Honor, what the undisputed material fact here is that Mason Baumgart pulled out in front of Roger Cottrell at a point in time that Roger Cottrell did not have any ability to act whatsoever. He gave three statements in this case immediately after the accident to the police officer, during a recorded statement approximately a week later, and then during his deposition approximately two years later. And all three of those occasions, the undisputed material fact here that Mr. Cottrell offered is that Mason Baumgart pulled out in front of him at a point in time that he had no ability whatsoever to react. Now, the distance estimate is not binding on Mr. Cottrell. The timing estimate is not binding on Mr. Cottrell. So there's nothing from Cottrell that indicates that the vehicle in front of him that he collided with stopped, had stopped? I do not believe he testified to that during his deposition, Your Honor. He saw only the black pickup truck prior to the accident. Mason Baumgart pulled out in front of Roger Cottrell when Roger Cottrell could not swerve, he could not hit his brakes. He did not have time whatsoever to react. I understand that's an argument. My question really boils down to if witness A says, pulled out in front of me, never stopped, and was so close to me that I had no ability to brake whatsoever. And three other witnesses say something else. And we have to presume the evidence in a light most favorable to the opposing side, the saw something else side. Why isn't that a question of fact for the jury? Because, Your Honor, the other witnesses, they don't actually contradict what Mr. Cottrell said. The other witnesses testify that in their opinion, they, that Mason Baumgart would have had time to cross the intersection. Just as time and distance estimates are not binding on Mr. Cottrell, they are not binding on Ms. Roussan, Elliott, or Mason Baumgart. What is binding is reaction time. And it's so binding that courts in the state of Missouri and courts in the Eighth Circuit will take judicial notice of the fact that a human reaction time is three quarters of a second. And so at the time Mason Baumgart pulled out in front of Roger Cottrell, Roger Cottrell was less than three quarters of a second from that intersection. Only if there's inconclusive proof that Mr. Cottrell was not distracted or otherwise was attentive, right? He testified that he was looking directly at Mason Baumgart at the time that he pulled out, that he made eye contact with Mason Baumgart at the time that he pulled out. And there's nothing in the record whatsoever that disputes that. There's been no testimony offered whatsoever that Roger Cottrell was looking at anything other than Mason Baumgart's vehicle at the time he approached the intersection. Well, isn't his credibility or reliability subject to question? I mean, he's not inherently credible, right? There could be a dispute about his memory in light of his concussion and that sort of thing that could create a dispute. There's nothing inconsistent whatsoever in his testimony at any point in time. Immediately after the accident, a week after the accident, two years after the accident, he has been clear on that exact same point and they've offered nothing whatsoever that disputes that fact. But within the range of human experience, people are mistaken but certain. People can be mistaken, yes, I will agree. Mistaken but certain. I mean, mistaken but certain. I absolutely saw X to be a fact and then they, I mean, then they spin back the videotape and you say, wow, X didn't happen, right? I mean, and then that happens, I mean, we see that in cases all the time. You know, I was a trial judge for 25 years and I can just tell you that I've heard plenty of witnesses say, A is a fact, I'm absolutely correct and I know that person is not lying. That person honestly believes that A is a fact and then somebody turns on a video that's of the very scene and they say, A is definitely not a fact. That person isn't lying, they just have a misperception, you know, and whenever there may be a misperception, isn't that a question of fact for the jury to ultimately decide? Your Honor, plaintiff is bound by his testimony and his testimony relates not to an estimate of time or distance but to his reaction time and the courts will take judicial notice of that and he's bound by that. At the point in time that Mason Bomgar pulled out, it was so late that it would not have been foreseeable, it would not have been reasonable or probable for the driver of the Brown motor vehicle to predict that he would pull out at that point in time. The testimony that's undisputed about the driver of the Brown motor vehicle is that it pulled, is two lanes headed north. There's a right-hand lane that Mr. Cottrell was traveling in and there is a left-hand lane and the undisputed testimony about where the Brown car went is that it made a left-hand turn into that left turn lane and continued north. Without Mason Bomgar here, there is no accident and, you know, we can speculate as to the motivations of the individuals involved and the timing of it, but the fact remains that had Mason Bomgar not pulled out at the point in time he did, so late that Mr. Cottrell had no time whatsoever to hit his brake, to swerve or react in any way, this accident would not have occurred. And Mason Bomgar, as a matter of law, is the proximate cause of this motor vehicle accident. Regardless of what happened beforehand, Mason Bomgar became an independent intervening cause, rendering him as a matter of law, the proximate cause of this motor vehicle accident. So you're saying it wouldn't matter if it's undisputed that the Brown car entered the intersection in a manner that forced Bomgar to stop. You're saying factually that does not matter. I think regardless of whether or not, whether or not he recalls and testifies that he had to stop. No, my question is, if it is an objective fact that a Brown car entered the intersection and forced Bomgar to stop, you're saying there would still be no case. I think that fact is disputed, Your Honor. That's why a summary judgment may not be appropriate. But that's not the issue here. The issue is that Mason Bomgar pulled out so late Mr. Cottrell didn't have time to react. How do we know that? Because Mr. Cottrell testified to that during his deposition. He offered that on two prior occasions, and there's nothing that plaintiff has offered that actually contradicts that fact. What does Bomgar say? Does he say I could have made it through unless if the Brown car hadn't been there? He estimated that he could. He also estimated that he first saw Roger Cottrell when he was approximately eight to ten car lengths from the intersection, that he looked back then again at the Brown car to make sure the Brown car wasn't moving, that he looked again back at Roger Cottrell as he approached the intersection, and at that point in time estimated he had sufficient time to cross the intersection. And you say there's no dispute between Bomgar's view on that and Cottrell's view? Bomgar's testimony is an estimate of time and distance. Roger Cottrell's testimony is with respect to his ability to react, which courts will take judicial notice of. And Roger Cottrell testified he had no ability whatsoever to react. And what do you make of the statement of eyewitness Sylvia Rosanna Elliott? Like Mason Bomgar, hers is an estimate of time and distance, Your Honor, and it does not directly contradict Mr. Cottrell's testimony that he did not have any time to react whatsoever when Mason Bomgar pulled out in front of him. Now, Your Honor, to discuss the vexatious refusal to pay, the standard is that an insurance company may insist on a judicial determination of an open question of fact or law without paying a penalty. I think the fact that I am standing here in front of you making an appellate argument in which American family received summary judgment at the district court level demonstrates at the very least an open question of fact or law and that it shouldn't be the case that American family is penalized or could be penalized potentially for having a case where they are able to obtain summary judgment and then potentially are reversed on appeal and then have to pay a vexatious refusal penalty under those circumstances. Well, that would only take place if the case goes back and you lose. Correct, Your Honor. So this would remain an open question. What I'm saying is our court, we're not in a position to really resolve that issue at this juncture. Well, Your Honor, I think we have to demonstrate that there is an open question of fact. I don't think we could send the case back and make a conclusion now on that claim. That would be a part of proceedings yet to go. I don't think we could make a legal determination of that. Well, Your Honor, if this case is remanded, it will go to trial and American family could win or could lose. But that is an open question of law and American family is entitled to. I have a hard time seeing how we could make a legal conclusion on that claim at this point if the case goes back. If we resolve it as a matter of law here at this point, perhaps so, but I don't see how you can win on the second point and lose on the first point. Well, Your Honor, American family has to demonstrate that it has a notorious defense. Not necessarily a prevailing defense, just a defense that could prevail. And the fact that American family won summary judgment at the district court level. But that would depend on disputed facts being resolved, including facts about the extent to which you actually investigated the claim and carried out a reasonable examination of the claim to make a decision to deny it. Yes, Your Honor. And a reasonable investigation requires an investigation that is not an unending or unceasing investigation. Reasonable is not extreme or excessive, moderate, fair, and possessing sound judgment. And cases holding that insurance company did not conduct an unreasonable examination or investigation of a claim rely on factual information that additional investigation would have uncovered. Those are the cases that the plaintiff offered in support of their appeal. And there are no facts that plaintiff has offered at any point that any additional investigation would have uncovered. So if there are not any further questions from the court, I think in conclusion that the district court reached the right result in determining Mason Baumgart was the proximate cause of the motor vehicle accident at issue. And thank you for your time. Thank you, Mr. Thompson. Mr. Wood, your rebuttal. This is a case of concurring fault. Fault both by Mason Baumgart and also by the uninsured driver. We don't dispute that Baumgart was a proximate cause of the collision in this case. But having one person as a proximate cause does not preclude there being another party who is also a proximate cause. By definition, that's what happens in every case where there is concurring fault. Missouri cases make it very clear that to prove proximate cause, you don't have to prove sole cause. Yeah. What about this argument that is being advanced, that essentially Mr. Cottrell has made statements? He's bound by his statements. He's not bound by his statements that are just mere estimates of distance, but he is bound by statements that I was paying attention, I was observant, and I had no ability whatsoever to react. I'm puzzled, first of all, by why we're talking about Roger Cottrell's ability to react. The question in the case is whether or not Mason Baumgart had time to safely go across the intersection. People who are not paying attention, for example, probably there are lots of times where they don't realize that they're not paying attention until it's too late. I'm sure that Roger Cottrell didn't take any evasive action. There's nothing in any of this stuff anywhere that says he did, but whether that was because there was absence of time or inattention or some other reason, those are fact questions for the jury. These are credibility questions that should be for a jury. They are questions of who and what you believe, and those are uniquely designed or suitable for jurors to respond. That's what should happen in this case. I think part of the argument being advanced is that because he's the party, that it's different, and that the party is bound by their statements in a way that an average witness may not be. There may be some legal significance to the claim that I had no reaction time, and then when Judge Autry says accidents unavoidable, it's because of some admission on the part of the plaintiff. I think that's really what the argument is that's being advanced, at least in part. Does that give a response to that? I'd like to respond very quickly. I'm out of time, I realize, but Judge Autry actually never got to any question dealing with Cottrell's ability. Judge Autry relied exclusively on the prior case that was involved in this, the Horton case, the wave-out case. The wave-out case didn't deal with any questions about what the injured party could have done. That's just something where Judge Autry didn't look at that at all. He found that case to be controlling, and although we're talking about what Judge Autry did, this court is doing de novo review, not just questioning, reviewing what Judge Autry did. You're doing de novo review, and in terms of the inevitability of this collision, that was something that may have been the determination that Judge Autry made, but it was inconsistent with the standard for review on summary judgment because it ignored evidence that was present to show that Baumgart did have time to get across, safely across, and that the accident would not have happened in the absence of the brown car pulling out and forcing him to stop in a lane that was reserved for moving traffic. Thank you, Mr. Wood. Thank you. The court wishes to thank both counsel for the argument you've provided to the court this morning, the briefing that you've submitted, and we'll take the case under advisement. You may be excused. Madam Clerk, we'll call case number three for the morning. The next case for argument is Caslone v. Karsten. Mr. Rowland.